United States District Court
Southern District of Texas
**ENTERED**
January 22, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| EDWARD MANUAL CORBETT, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00196 |
| | § | |
| ARMANDO CHAPA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Edward Manual Corbett, a Texas prisoner appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997(e)(c); 28 U.S.C. § 1915A. For the reasons discussed below, the undersigned recommends that Plaintiff's complaint be DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1] Plaintiff is **WARNED** that if he accumulates three such strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

### B. Background.

#### 1. Proceedings.

##### a. The instant action.

Plaintiff filed this suit on August 1, 2023, broadly alleging that, during his time as a pretrial detainee at the Aransas County Detention Center, the defendants violated his civil rights by issuing and enforcing a policy that limited his use of the detention center's law library.  (Doc. No. 1.)  In an effort to better understand Plaintiff's claims, the Court ordered Plaintiff to answer a questionnaire and, later, ordered Plaintiff to provide a more definite statement.  (Doc. Nos. 9, 16.)  Plaintiff subsequently provided responses to both of the Court's orders.  (Doc. Nos. 11, 22, 31.)  Plaintiff has also filed multiple letters with the Court (Doc. Nos. 13-15, 23-29, 33-34), in which he mostly restated or elaborated upon his claims, (Doc. Nos. 13-15, 23, 26-29, 34).  In addition to Plaintiff's complaint, questionnaire responses, and more definite statement, the undersigned considers Plaintiff's letters as part of his pleadings and draws upon them in screening Plaintiff's claims.

##### b. Plaintiff's two previous lawsuits.

Plaintiff filed two other lawsuits in this Court before filing the instant action.  *See Corbett v. Mills, et al.*, No. 2:23-cv-00088 (Ramos, J.), *and Corbett v. Aransas Cnty. 36th Dist., et al.*, No. 2:23-cv-00111 (Ramos, J.).

In *Corbett v. Mills*, filed on March 31, 2023, Plaintiff, as a pretrial detainee at the Aransas County Detention Center, asserted that his constitutional rights were violated, in part because he allegedly was not provided with access to law books in order to contest his pending criminal case.  *See* S.D. Tex. Case No. 2:23-cv-00088, Doc. No. 1, p. 3; *id*., Doc. No. 1-1, pp. 2-3; *id*., Doc. No. 17, pp. 1-3.  The undersigned recommended dismissal of that case with prejudice

as frivolous or for failure to state a claim upon which relief could be granted, concluding that Plaintiff did not plausibly allege any cognizable injury resulting from any denial of law books because he was represented by counsel in his criminal case. *Id.*, Doc. No. 17, pp. 4-5. The district court adopted the undersigned's memorandum and recommendation—overruling Plaintiff's objections—dismissed the case, and ordered that its dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g). *See id.*, Doc. Nos. 33, 34.

Plaintiff's suit in *Corbett v. Aransas County*, filed on April 25, 2023, related to Plaintiff's requests for the addresses of various government officials and entities and his written letters to others. *See* S.D. Tex. Case No. 2:23-cv-00111, Doc. No. 1. Plaintiff accused Aransas County jail officials of either providing Plaintiff with the wrong addresses or informing Plaintiff that they could not give out the requested addresses, and that he feared he and his family would be murdered if his letters fell into the wrong hands. *Id.* at 1-4; *id.*, Doc. No. 8, p. 4; *id.*, Doc. No. 12, pp. 2-4. Unlike *Corbett v. Mills*, Plaintiff's allegations in *Corbett v. Aransas County* did not overlap with the case at hand, other than that they involved related or the same defendants, namely Aransas County and Sheriff Mills. *See id.*, Doc. No. 1. The district court dismissed Plaintiff's claims with prejudice as frivolous or for failure to state a claim and imposed another "strike" pursuant to 28 U.S.C. § 1915(g). *Id.*, Doc. No. 33, pp. 12-13.[2]

### 2. *The parties in this case.*

Plaintiff is currently a prisoner in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"), housed at the Stevenson Unit in Cuero, Texas.[3] (Doc. No.

---

[2] The district court dismissed without prejudice those claims that Plaintiff attempted to bring on behalf of others, because Plaintiff lacked standing to assert claims on behalf of anyone else. *Id.* at 12.

[3] According to his complaint, Plaintiff was confined at the Aransas County Detention Center at the time he filed this civil rights suit. *See* Doc. No. 1.

33.)  His lawsuit, however, concerns incidents that allegedly occurred while he was a pretrial

detainee at the Aransas County Detention Center in Rockport, Texas.[4]

>Plaintiff names five defendants in this case:

- Armando Chapa, Aransas County Deputy Chief of Detention Center Operations ("Deputy

  Chapa");

- Michael Brooks, Aransas County Chief Deputy of Uniform Operations ("Deputy

  Brooks");

- Bill Mills, Aransas County Sheriff ("Sheriff Mills");

- the City of Rockport, Texas; and

- Aransas County, Texas.

### 3.  *Plaintiff's allegations.*

>Plaintiff's complaint centers on a policy promulgated by the Aransas County Sheriff's

Office that affects inmates' access to the Aransas County Detention Center's law library (the

"Library Policy").  Plaintiff claims that the Library Policy unconstitutionally deprives him of

access to the law library to "acquire knowledge or case study."  (Doc. No. 1, p. 5.)  The Library

Policy was issued on July 10, 2023; Plaintiff has submitted it as part of his filings in this case.

The Library Policy states, in relevant part:

>>Where there has been no established guidelines related to the use of our law
>>library.  After consulting with the Texas Commission on Jail Standards and our
>>County Sheriff, this new policy will come into effect on this date, July 10, 2023.

---

[4]  In addition to Plaintiff's filings about the status of his criminal cases, *see* Doc. No. 1; Doc. No. 13, pp. 2-9; Doc. No. 31, pp. 2-4, the undersigned takes judicial notice of the fact that Plaintiff was a pretrial detainee during the time of the events alleged in the complaint.  *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (allowing a court to take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings, [but not] . . . of the factual findings of another court"); *see also* Fed. R. Evid. 201(c)(1). Plaintiff was convicted in Texas state court for aggravated sexual assault of a child and the manufacture and delivery of a controlled substance; he was sentenced on July 31, 2023, to imprisonment for 20 years and ten years respectively.  Plaintiff is set to be released from prison in 2042 and will be eligible for parole in 2032.  *See Inmate Information Details: Corbett, Edward Manual, TDCJ Number: 02463387*, Tex. Dep't Crim. Just., https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=50544365 (last visited January 22, 2024).

From this day, the new guideline on the use of the Aransas County limited law library will be, each inmate will receive the privilege of accessing the detention center law library for a total of two hours per week, per inmate.  This two-hour allowance will be fully enforced.  Each request will be honored at a first come first basis however a request may be delayed during that shift depending on current activity at the jail at the time.

The use of the library will be allowed from the evening hours of 6:00 pm and 10:00 pm.  There will be no daytime accessibility between the hours of 6:00 am and 6:00 pm.  Each shift will comply with the inmate's request and the request will not extend into the oncoming shift.

Each inmate will access the pertinent materials during their visit.  The visit time will not be done in minute increments.  Each visit allowed will be for the two whole hour time allotted for each inmate or one hour.

(For example) if an inmate requests the use of the law library at any day of the week and during the established hours.  That inmate can remain in study for one hour or the whole two if he or her chooses, or use his or her second hour later that week with a total of two hours, twice per that 7-day period.

This new mandate respects each inmate's request and need to acquire knowledge and or case study they are seeking and remains in compliance with Texas Jail Commission on accessibility to case study and law.

(Doc. No. 1-1.)

Plaintiff claims that the Library Policy limited the hours of his "allowed time to do case study," to only a four-hour window per day and two hours per inmate per week, whereas before, inmates purportedly had an unknown or unlimited amount of access to the law library at all hours of the day—"from 6:00 a.m. to 6:00 p.m. and 6:00 p.m. to 6:00 a.m."  (Doc. No. 29, pp. 1-2.) Plaintiff explains that, in addition to the time constraints imposed by the new Library Policy, Plaintiff's time could be impeded by the pod officers' shift change and duties, such as "head count, cleaning supplies for the pods, ice buckets, clean seg. cells also do shake downs of two pods and two [illegible] and all other official functions of the jail, so that it would be almost impossible for one to go to said law library before no movement at 10:00 p.m[.]"  (Doc. No. 26,

p. 5; *see also* Doc. No. 1, p. 5.)  Plaintiff claims that he has written "several request forms" asking to go to the law library "but was denied."  (Doc. No. 29, p. 1.)

Plaintiff also alleges that he is unable to access law books "to acquire knowledge or case study" because he must request books by name without knowing what books are available at the law library.  (Doc. No. 1, p. 5.)  He states, "how is that we must imagine a library, that we have no index or catalogue of said books, I'm sure this is some how a violation of my civil rights." *Id.*; *see also* Doc. No. 27, p. 2; Doc. No. 29, p. 1.  Plaintiff has purportedly faced this issue "[s]ince my arrival" at the Aransas County Detention Center.  (Doc. No. 27, p. 2.)

Plaintiff believes that, because prison officials know Plaintiff is a member of the LGBTQ+ community, Defendants enacted the Library Policy as "an attack on [Plaintiff's] person" for his "life style as an open member of" the LGBTQ+ community.  (Doc. No. 22, p. 3; Doc. No. 27, p. 3.)  Plaintiff also "feel[s]" that Defendants sought to "stop me from fighting for my civil and equal liberties by denying my access to court" because Plaintiff had filed or helped others file lawsuits against Defendants and other local officials.  (Doc. No. 26, p. 4; Doc. No. 29, pp. 3-4.)  Plaintiff complains: "I am well aware of the things that are being said about my self through the county jail, that all of the things being put in place by the county, because of this gay guy 'myself' who is filing lawsuits, is the cause of all of <u>this</u>."  (Doc. No. 27, p. 3 (emphasis in original).)

Plaintiff asserts that the Library Policy was "directed [solely] at my self," and at the same time, that he is not the only inmate whose rights have been violated, explaining that there are "only four people in the whole facility that even asked to use the law materials," and "the [Library Policy] was an attack on those persons by the said Defendants."  (Doc. No. 27, pp. 1-2; Doc. No. 29, p. 4.)  Plaintiff attributes his alleged "lack of access to [the] law library and

adequate materials" to "one of the main factors in [his] mental decline," stress, and increased

dosage of "mental medications," and that those factors have led Plaintiff to suffer from "small

seizures."[5]  (Doc. No. 14, p. 1; Doc. No. 22, p. 3; Doc. No. 26, pp. 5-6; Doc. No. 31, p. 4.)

### 4. Plaintiff's legal claims.

Plaintiff claims that Defendants have violated his constitutional rights under the First,

Sixth, Thirteenth, Fourteenth, Fifteenth, and Nineteenth Amendments of the United States

Constitution.  (Doc. No. 1, p. 5; Doc. No. 22, p. 2; Doc. No. 23, pp. 1-2; Doc. No. 27, p. 4; Doc.

No. 29, pp. 1-2.)  Liberally construed, the undersigned understands Plaintiff's claims in this

action to be that:

- Deputy Chapa, Deputy Brooks, and Sheriff Mills, in their official capacities:[6]

  (1) "deprived [Plaintiff] of [his] constitutional rights by the limited use of the 'law

  library'" (Doc. No. 1, p. 5; Doc. No. 22, p. 2; Doc. No. 23, p. 2; Doc. No. 26, p. 2);

  (2) promulgated the Library Policy to discriminate against Plaintiff because of Plaintiff's

  sexuality as an "open member" of the LGBTQ+ community (Doc. No. 22, p. 3; Doc. No. 27,

  pp. 3-4; Doc. No. 26, p. 4);

  (3) promulgated the Library Policy to retaliate against Plaintiff for his filing of previous

  lawsuits in order to deny his access to the courts (Doc. No. 26, p. 4; Doc. No. 27, pp. 1-2);

  and

---

[5] Plaintiff included his medical records in the form of "Aransas County Progress Notes" in his pleadings.  *See* Doc.
No. 14.  When the undersigned asked Plaintiff in the Order for More Definite Statement how his medical records
relate to his claims in this case of being unconstitutionally deprived of access to the law library and law books at the
Aransas County Detention Center (Doc. No. 16, p. 5 (Question 13)), Plaintiff responded, "[t]o show actual
cognizable, and cogn[i]tive injury, from my mental degradation[] and stress, caused by lack of access to law library,
and adequate materials."  (Doc. No. 31, p. 4.)

[6] Although Plaintiff does not expressly allege claims against Deputy Chapa, Deputy Brooks, or Sheriff Mills in their
individual capacities, in an abundance of caution the undersigned nonetheless also analyzes these claims against
them as such.  As discussed later in the main text, Plaintiff's claims fail to survive screening regardless of whether
they are construed as being lodged against those defendants in their individual capacities.

(4) conspired against Plaintiff to violate his rights (Doc. No. 22, p. 2; Doc. No. 26, p. 3; Doc. No. 29, pp 1-2);

- The City of Rockport, Texas, for "allowing the official oppression of the people detained in the Aransas County Detention Center" (Doc. No. 1, p. 3); and

- Aransas County, Texas, for failing to follow federal guidelines "for the use of[] said privileged law library," in violation of Plaintiff's constitutional rights (Doc. No. 1, p. 3).

### 5. Plaintiff's requested relief.

Plaintiff seeks declaratory, injunctive, and monetary relief in this case.  As declaratory relief, Plaintiff requests that this Court issue a judgment stating that the actions of Defendants and their staff violated the United States Constitution.  (Doc. No. 23, p. 3.)  For injunctive relief, Plaintiff requests that the Court "apply all, and or correct, federal compliances . . . into the 36th district so that person[s] will have the ability to acquire knowledge and or case study."  (Doc. No. 1, p. 6.)

Separately, Plaintiff somewhat confusingly states that he seeks a "preliminary and permanent injunction enjoining Defendant[s] and staff from [the Aransas County Detention Center] from allowing the use of the law library."  (Doc. No. 23, p. 3.)  However, the undersigned believes that Plaintiff actually seeks a preliminary and permanent injunction requiring Defendants and Aransas County Detention Center staff to apply federal guidelines and standards to Plaintiff's access to the law library.  Thus, the undersigned liberally construes Plaintiff's requests for injunctive relief as such.

Finally, Plaintiff seeks monetary damages for his alleged mental anguish and the violation of his civil rights, as well as the "reasonable costs and expenses" of this action, and any

such other and further relief as the court may deem just.  (Doc. No. 1, p. 6; Doc. No. 11, p. 2; Doc. No. 23, p. 3.)

### C. Standard of review for screening.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Id.*  Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review. Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions. *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### D.  Law.

Under § 1983, a suit against individuals in their official capacities "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted).

A municipality may only be held liable for acts for which it is actually responsible.  *See Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  The governmental body must either itself subject a person to a deprivation of rights or cause a person to be subjected to such deprivation.  *Connick v. Thompson*, 563 U.S. 51, 59 (2011).  A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy or custom.  *Monell*, 436 U.S. at 694; *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation).  An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 60.

Liability of a municipality under § 1983 therefore requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability," because "the unconstitutional conduct must be directly attributable to the

municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

"Importantly, to adequately plead a policy or custom, the specific policy must be identified; it

may not be inferred 'merely because harm resulted from some interaction with a governmental

entity.'" *Kibbey v. Collin Cnty. Detention Facility*, No. 4:21-CV-799, 2023 WL 2598666, at *3

(E.D. Tex. Mar. 1, 2023), *adopted*, 2023 WL 2593152 (E.D. Tex. Mar. 20, 2023) (quoting

*Guillotte v. Knowlin*, Civ. No. 21-1422, 2021 WL 7632004, at *2 (E.D. La. Dec. 7, 2021)

(internal citation and quotation marks omitted)).  "[B]oiler plate allegations of municipal policy,

entirely lacking in any factual support that a municipal policy does exist, are insufficient."

*Rodriguez v. Southern Health Partners, Inc*., No. 3:20-CV-0045-D, 2020 WL 2928486, at *5

(N.D. Tex. June 3, 2020) (citations omitted).

 Courts construe the identity of the final policymaker as "a question of law—specifically a

question of state law—and not a question of fact." *Groden v. City of Dallas, Tex.*, 826 F.3d 280,

284 (5th Cir. 2016).  In Texas, "the county Sheriff is the county's final policymaker in the area

of law enforcement, not by virtue of the delegation by the county's governing body but, rather,

by virtue of the office to which the sheriff has been elected." *Turner v. Upton Cnty., Tex.*, 915

F.2d 133, 136 (5th Cir. 1990) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.

1980)). Where the care of inmates is concerned, state law specifically provides that "[t]he sheriff

of each county is the keeper of the county jail." Tex. Loc. Gov't Code § 351.041(a).  As such, a

county sheriff is required to "safely keep all prisoners committed to the jail by a lawful authority,

subject to an order of the proper court." *Id*.  Plaintiff's claims against Deputy Chapa, Deputy

Brooks, and Sheriff Mills in their official capacities are therefore effectively a suit against

Aransas County.

### E. Discussion.

#### 1. Plaintiff's First Amendment claim for denial of library access should be dismissed because he fails to plausibly allege that the Library Policy prevented him from accessing the courts.

Plaintiff alleges that the promulgation of the Library Policy unconstitutionally denied or limited his use of the law library at the Aransas County Detention Center, because it impaired his ability to "acquire knowledge or case study" by limiting the number of hours during which Plaintiff could visit the library. (Doc. No. 1, p. 5.) Plaintiff asserts that Deputy Chapa, Deputy Brooks, and Sheriff Mills are "the decisionmakers for the policy and procedures, put in place at the Aransas County Detention Center for the staff to follow." (Doc. No. 26, p. 2.) However, as discussed above, Texas law dictates that Sheriff Mills is the final policymaker in the context of municipal liability.

As stated above, liability of a municipality under § 1983 requires a showing of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 578. "[I]solated unconstitutional actions by municipal employees will almost never trigger liability," because "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. Here, Plaintiff identifies the policymaker and the official policy (the Library Policy). The issue is whether Plaintiff plausibly alleges a violation of constitutional rights that is a "moving force" of the policy. The undersigned concludes that he does not.

Prisoners have a fundamental constitutional right of meaningful access to the courts through adequate law libraries and access to legal materials. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Clewis v. Hirsch*, 700 F. App'x 347, 348 (5th

Cir. 2017).  However, "this constitutional guarantee does not afford prisoners unlimited access to

prison law libraries." *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998).  The right to

access the courts "does not encompass more than the ability of an inmate to prepare and transmit

a *necessary* legal document to the court."  *Yoo v. U.S. Marshal Serv.*, No. 6:20CV401, 2023 WL

2802247, at *8 (E.D. Tex. Mar. 3, 2023) (emphasis in original) (internal citations omitted); *see*

*also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (explaining that the right

"encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims

challenging their convictions or conditions of confinement").  Moreover, limitations may be

placed on library access so long as the regulations are "reasonably related to legitimate

penological interests," even when it "impinges on inmates' constitutional rights."  *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987).

　　　　Prisoners must therefore allege an actual injury to demonstrate a violation of this right.

*Lewis*, 518 U.S. at 351.  Actual injury "must stem from defendants' unconstitutional conduct,"

*Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999), and show that the prisoner's "position as

a litigant was prejudiced by his denial of access to the courts."  *Eason v. Thaler*, 73 F.3d 1322,

1328 (5th Cir. 1996) ("[I]f Eason was pursuing a legal action which necessitated his use of the

law library and access to the library was denied, this deprivation could represent a violation of

his constitutional rights."); *see also Torres v. Bullock*, 2021 WL 2451326, at *4 (S.D. Tex. Apr.

6, 2021) (Hampton, M.J.), *adopted as modified*, 2021 WL 1783545 (S.D. Tex. May 4, 2021) ("In

particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost

an actionable or nonfrivolous claim or was prevented from presenting such a claim because of

the alleged denial.").

> [The prisoner] might show, for example, that a complaint he prepared was
> dismissed for failure to satisfy some technical requirement which, because of

> deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351; *see also McIntosh v. Thompson*, 463 F. App'x 259, 260-61 (5th Cir. 2012) (unpublished) ("Even if McIntosh's constitutional rights had been restricted, he failed to allege sufficiently that he suffered an injury in fact, which is required to state a claim for denial of meaningful access to courts.").  "At a minimum, 'a prisoner must demonstrate that he suffered actual injury in that the prison hindered his efforts to pursue a nonfrivolous action.'"  *Thames v. Harris Cnty. Jail*, Civ. No. H-19-0944, 2020 WL 1557408, at *4 (S.D. Tex. Apr. 1, 2020) (Lake, J.) (quoting *DeMarco*, 914 F.3d at 387).

Plaintiff's claims fail to meet that minimum standard.  Plaintiff merely alleges that the Library Policy and the lack of a library catalogue or index to find books unconstitutionally deprive him of access to the law library to "acquire knowledge or case study."  (Doc. No. 1, p. 5; Doc. No. 27, p. 2; Doc. No. 29, p. 1.)  He does not assert that this alleged deprivation has hindered his ability to assert any specific claim, or that his failure to access or his limited access to the law library or any legal materials has resulted in a failure to adequately bring any specific case, let alone a nonfrivolous one.  In the absence of a plausible allegation that the defendants' actions "actually hindered" Plaintiff's efforts to pursue a nonfrivolous legal claim, so as to allege an actual injury, "an inmate has no standing to pursue a claim for a violation of his right of access to the courts."  *Jones v. Lumpkin*, Civ. No. H-23-51, 2024 WL 69082, at *4 (S.D. Tex. Jan. 5, 2024) (Hittner, J.) (citing *Lewis*, 518 U.S. at 348-49 & n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all.").

Moreover, the Library Policy's limitation to a four-hour window per day to access the law library and its allocation of two hours of law library time per inmate per week are not

themselves unconstitutional.  *See Steele v. United States Postal Serv.*, No. PE:22-CV-00004-DC-DF, 2022 WL 13974100, at \*5 (W.D. Tex. Oct. 11, 2022), *adopted*, 2022 WL 17538740 (W.D. Tex. Dec. 8, 2022) ("The undersigned cannot recognize, absent any case law or statutory support, a constitutional right to a specific number of library sessions, let alone a given number of hours within them.").  Likewise, Plaintiff's claims that he must receive approval to visit the law library or that his limited window in time may be impeded by other jail activities, such as officers' shift change and duties, do not plausibly allege any violation of his constitutional rights because he fails to explain how he has been impeded from lodging any constitutional claim.  And tellingly, Plaintiff's filing of this lawsuit further undercuts any notion that he was denied meaningful access to the courts because of the Library Policy.  Plaintiff's conclusory allegations cannot support a claim of municipal liability upon which relief can be granted.  Plaintiff's claims against Aransas County and against Deputy Chapa, Deputy Brooks, and Sheriff Mills in their official capacities should be dismissed.

       To the extent that Plaintiff seeks to hold Deputy Chapa, Deputy Brooks, and Sheriff Mills individually liable for the alleged constitutional deprivation of his rights, he likewise fails to plausibly allege a viable claim.  A plaintiff suing government officials in their individual capacities must allege "specific conduct giving rise to a constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).  In suits against defendants in their individual capacities, the plaintiff must demonstrate that the defendant was either personally involved in the acts causing the deprivation of the plaintiff's constitutional rights, or that a causal connection existed between an act of the supervisory official, like the implementation of a policy, and the constitutional violation the plaintiff seeks to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1986) (applying the standard to defendant sheriff); *Gates v. Tex. Dep't of Protective & Regulatory*

*Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (applying the standard to supervisory officials generally).

Plaintiff generally asserts that these defendants "deprived [Plaintiff] of [his] constitutional rights by the limited use of the 'law library.'"  (Doc. No. 1, p. 5; Doc. No. 22, p. 2; Doc. No. 23, p. 2; Doc. No. 26, p. 2.).  Specifically, Plaintiff holds Deputy Chapa responsible for "not allowing the detention center the use of law books, when needed as they were allowed before."  (Doc. No. 1, p. 3.)  As to Deputy Brooks and Sheriff Mills, the undersigned understands Plaintiff's claims as alleging their culpability in agreeing to or ratifying the library policy.[7]  *Id*. But as discussed above, Plaintiff still fails to plausibly assert a constitutional violation by the enactment of the Library Policy.  Plaintiff fails to plausibly allege that the Library Policy is unconstitutional, and so he fails to plausibly allege that these defendants can be held individually liable for promulgating or enforcing it.

Because Plaintiff fails to allege any constitutional injury, the undersigned recommends that Plaintiff's claims that the defendants unconstitutionally deprived him of or limited his access to the law library by the promulgation and enforcement of the Library Policy be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### 2.  *Plaintiff fails to state actionable discrimination, retaliation, or official oppression claims.  Those claims should be dismissed.*

Liberally construed, Plaintiff asserts claims of discrimination and retaliation against Deputy Chapa, Deputy Brooks, and Sheriff Mills, and a claim of "official oppression" against the City of Rockport.  As discussed in further detail below, Plaintiff fails to plausibly allege a

---

[7]  Verbatim, Plaintiff asserts the ground for relief against Deputy Brooks as "by the agreement of the before allowed use of the law library, to the now privilege of two hours per week," and against Sheriff Mills as "was consulted about the new policy, the knowing that with no movement after 10:00pm, and 2 [hours per week], depending on jail activity would leave or 'give' me or other detained persons, no time for the law library."  *Id*.

claim under any of these theories.  The undersigned therefore recommends that these claims be dismissed as frivolous and for failure to state a claim.

### a. *Plaintiff's discrimination claim should be dismissed.*

Plaintiff alleges that Deputy Chapa, Deputy Brooks, and Sheriff Mills enacted the Library Policy as an "attack on [Plaintiff's] person" for his "life style as an open member of the L.G.B.TQ community."  The undersigned construes Plaintiff's allegation as an equal protection claim.  (Doc. No. 22, p. 3; Doc. No. 27, p. 3.)  Discrimination by a state actor on the basis of sexual orientation can be a violation of the Equal Protection Clause of the Fourteenth Amendment.  *See Johnson v. Johnson*, 385 F.3d 503, 530-31 (5th Cir. 2004) (although neither the Supreme Court nor the Fifth Circuit has recognized sexual orientation as a suspect classification [or protected group], a state violates the Equal Protection Clause if it disadvantages individuals identifying as LGBTQ+ "for reasons lacking any rational relationship to legitimate government aims").  Plaintiff's discrimination claim should be dismissed because he fails to plausibly allege that the Library Policy was promulgated because of his sexual orientation or that it was enforced differently against him than against others because of his sexual orientation.

To state an equal protection claim under § 1983, a plaintiff must allege that a state actor intentionally discriminated against him because he was a member of a protected class.  *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).  Liberally construing Plaintiff's claim as an equal protection claim, Plaintiff's allegation that Deputy Chapa, Deputy Brooks, and Sheriff Mills discriminated against Plaintiff because of his sexual orientation is conclusory.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff does not contend that the Library Policy was promulgated because of his sexual orientation, or that it was enforced differently against him because of his sexual orientation.  Plaintiff does not allege any instance in which a non-LGBTQ+

inmate received different or greater access to the law library or legal materials than Plaintiff. Because Plaintiff fails to allege different treatment based on his sexual orientation, his discrimination claim fails.

Additionally, Plaintiff claims that there are "only four people in the whole facility" who have requested access to the law library or its legal materials. (Doc. No. 27, pp. 1-2.) Plaintiff claims that the enactment of the Library Policy was "directed [solely] at my self," but also contends that the Library Policy was also "an attack on those persons by the said Defendants." Plaintiff does not allege that any of those other individuals identified themselves as members of the LGBTQ+ community. Even a liberal construction of Plaintiff's factual claims suggests that the Library Policy applies equally to all inmates who seek to use the library, regardless of their sexual orientation. Plaintiff has not shown or alleged that he was in any way otherwise disadvantaged or otherwise discriminated against by virtue of his alleged membership in the LGBTQ+ community.

Even if Plaintiff had alleged a specific instance or instances of differing treatment compared to that of the other inmates requesting access to the law library or legal materials, Plaintiff would also have to show "that an illegitimate animus or ill-will motivated [his] intentionally different treatment from others similarly situated and that no rational basis existed for such treatment." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (*en banc*). In addition, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992); *see also Burge v. Stalder*, 54 F. App'x 793, at *2 (5th Cir. 2002). Here, Plaintiff

alleges no specific conduct or statements by any of the defendants expressing any discriminatory intent against any group. The Library Policy itself contains no suggestion of any discriminatory intent. Plaintiff's discrimination allegation therefore fails to state a claim under the Equal Protection Clause and should be dismissed.

### b. *Plaintiff fails to lodge a viable retaliation claim.*

Plaintiff also claims that Deputy Chapa, Deputy Brooks, and Sheriff Mills enacted the Library Policy in retaliation against Plaintiff for filing or helping others file lawsuits against those defendants and other local officials, including the two previous lawsuits that Plaintiff filed in this district. (Doc. No. 26, p. 4; Doc. No. 29, pp. 3-4.)

"An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to protect against retaliatory actions that may chill an individual's exercise of constitutional rights. *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). However, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006).

To state a claim for retaliation, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation," a showing that but for the retaliatory motive, the complained-of action would not have occurred. *McDonald*, 132 F.3d at 231.

For example, where an inmate was allegedly transferred to a food services job and thus "limited to approximately five hours per week to conduct legal research," the Fifth Circuit

determined that the evidence did not support a retaliation claim because limiting the inmate to five hours of library time per week did not violate the inmate's access to the court. *Jones*, 188 F.3d at 325-26.  Similarly, the Fifth Circuit held that an inmate's allegation that a defendant retaliated against him by removing him from his prison job and later transferring him to another prison failed to support an actionable retaliation claim as "[a] prisoner has no constitutionally protected interest in a particular facility or a specific work assignment." *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) (*per curiam*).

By contrast, an alleged adverse retaliatory act against an inmate was sufficient where, following an inmate's filing of a grievance, an official "filed a disciplinary report" against the inmate and the inmate alleged that another official "accepted the disciplinary charge, that he was convicted in a disciplinary proceeding ..., and that he was punished with 27 days of commissary and cell restrictions." *Hart v. Hairston*, 343 F.3d 762, 763 (5th Cir. 2003).  In *Parker v. Carpenter*, a pretrial detainee, after allegedly having a "verbal altercation with a jail officer," was transferred "from the low risk minimum security section to the overcrowded violent inmate section" of a jail.  978 F.2d 190, 192 (5th Cir.1992).  He alleged that, in the violent inmate section, he was "denied access to a bed to lay down on, despite jail official's knowledge of his serious back condition." *Id*.  The Fifth Circuit found a cognizable claim for retaliation under § 1983, particularly "because pretrial detainees are entitled to protection from adverse conditions of confinement created by prison officials for punitive purposes." *Id*. at 192-93.

Liberally construed and accepted as true, Plaintiff's claims plausibly allege the first prong of the retaliation test, that he exercised his constitutional right to access the courts by filing his two previous lawsuits in March and April 2023.[8]  While he also alleges that the Library Policy

---

[8]  Plaintiff also alleges that he helped others file lawsuits against the defendants in this case and against other local officials, *see* (Doc. No. 26, p. 4; Doc. No. 29, pp. 3-4), but he does not have a constitutional right to assist others

was promulgated approximately three months later, in July 2023, Plaintiff fails to allege any nonconclusory facts indicating the existence of retaliatory intent by any defendant, that the promulgation of the policy was a retaliatory act, or causation. Therefore, his retaliation claim should be dismissed.

To plausibly allege retaliatory intent, Plaintiff must offer something more than a mere belief that he was retaliated against. He must either offer actual evidence of a retaliatory intent or allege a chronology of events from which a retaliatory intent may be plausibly inferred. *See McDonald*, 132 F.3d at 231. Here, Plaintiff alleges only that he filed his two lawsuits against the sheriff, the county, and others, and that, approximately three months later, the defendants in this case promulgated the Library Policy. Plaintiff offers no direct evidence of any retaliatory intent by any of the defendants, and the policy itself contains no hint of any such intent. He also offers no chronology from which a retaliatory intent may be plausibly inferred: he alleges the filing of his lawsuits and then, approximately three months later, the adoption of the Library Policy, but no other facts suggesting retaliatory intent. In the absence of any direct evidence of retaliatory intent or a chronology plausibly indicating such intent, Plaintiff's allegation of retaliation fails to survive screening.

Plaintiff's retaliation claim is also undercut for an additional reason: his two prior lawsuits were never served on the defendants in those cases – both were dismissed at the screening stage. *See Corbett v. Mills*, No. 2:23-cv-00088, Doc. No. 33 (dismissing case with prejudice prior to service); *Corbett v. Aransas Cnty.*, No. 2:23-cv-00111, Doc. No. 33 (dismissing Plaintiff's claims with prejudice prior to service). Because Plaintiff's prior lawsuits

---

with filing lawsuits, so any claim of retaliation based on his assistance to others should be dismissed. *See Walter v. Director, TDCJ-CID*, No. 5:19cv127, 2022 WL 18715944, at *6 (E.D. Tex. Dec. 19, 2022), *adopted*, 2023 WL 1994375 (E.D. Tex. Feb. 14, 2023) (citing *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996)).

were never served, Plaintiff fails to plausibly allege any facts indicating that any of the defendants in this case were aware of those prior lawsuits. He therefore fails to allege facts indicating retaliatory intent; he likewise does not plausibly allege causation (that but for Plaintiff's lawsuits, the Library Policy would not have been adopted). *Cf. Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003) (plaintiff must produce at least some evidence that decisionmakers had knowledge of his protected activity; if decisionmakers were completely unaware of plaintiff's protected activity, then it could not be said that decisionmakers might have been retaliating against plaintiff for having engaged in that activity).

Plaintiff likewise fails to plausibly allege any facts to satisfy the third prong of the retaliation test, a qualifying retaliatory adverse act. To plausibly allege a qualifying retaliatory adverse act, a plaintiff must assert something "more than *de minimis* retaliation." *Morris*, 449 F.3d 682, 684-85. "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686. To satisfy the *de minimis* test, "a prisoner must allege adverse facts that rise 'to the level of that which would deter the exercise of a constitutional right.'" *Mitchell v. Denton Cnty.*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 989392, at *7 (E.D. Tex. Feb. 28, 2022), *adopted*, 2022 WL 9897819 (E.D. Tex. Mar. 31, 2022) (quoting *Morris*, 449 F.3d at 686). In *Mitchell*, the court found that because the plaintiff's placement in an isolation cell and his non-punitive segregation after he filed suit against defendants did not deter the plaintiff "from further exercising his constitutional rights[,]" he did not satisfy the *de minimis* test. *Id*. Here, the adoption of the Library Policy has not deterred Plaintiff from exercising his constitutional right to access the courts, whether by filing the instant lawsuit or in any other manner (such as, for example, the 11

additional letters he has filed with the Court in this case, not counting his complaint and his responses to the Court's questions).[9]

Plaintiff fails to plausibly allege an actionable retaliation claim against Deputy Chapa, Deputy Brooks, and Sheriff Mills.  The undersigned recommends dismissal of that claim.

### c. *Plaintiff's official oppression claim against the City of Rockport should be dismissed.*

Plaintiff sues the City of Rockport, alleging that it "allow[ed] the official oppression of the people detained in the Aransas County Detention Center."  As discussed above, Plaintiff fails to plausibly allege any violation of his constitutional rights through the adoption of the Library Policy.  Thus, the City of Rockport cannot be liable for "allowing" the promulgation of that policy.  But additionally, Plaintiff alleges no facts indicating that the City of Rockport had any control over any act or omission occurring at the county's detention facility; therefore, he fails to lodge any viable claim that the city could have prevented any constitutional violation that took place there.  Plaintiff's claim against the City of Rockport should therefore be dismissed.

Plaintiff characterizes the actions that the City of Rockport supposedly "allowed" as being "official oppression."  To the extent Plaintiff's might be liberally construed as bringing an official oppression claim in its own right, that claim should be dismissed as well.  "Official oppression" is a Texas state crime, a violation of section 39.03 of the Texas Penal Code.  But Plaintiff's lawsuit is brought under § 1983, which requires a violation of a plaintiff's federal rights.  *See Fabela v. Corpus Christi Indep. Sch. Dist.*, No. 2:19-CV-387, 2020 WL 2576175, at *8 (S.D. Tex. May 21, 2020) (Ramos, J.).  Moreover, "[a]s a general rule, criminal statutes do not create civil liability."[10]  *Vasquez v. San Benito Consolidated Indep. Sch. Dist.*, No. B-04-189,

---

[9]  *See* Doc. Nos. 12, 13, 14, 15, 21, 23, 25, 26, 27, 29, 34.

[10]  Pursuant to § 39.03, a public servant acting under color of his office or employment commits an offense if he (1)

2006 WL 8446897 (S.D. Tex. June 15, 2006) (Hanen, J.) (citing *Gann v. Keith*, 151 Tex. 626, 634 (1952)).  The Texas Penal Code does not provide a civil cause of action for official oppression.  *See Fabela*, 2020 WL 2576175, at *8.  Therefore, Plaintiff fails to state an § 1983 for official oppression, and his claim against the City of Rockport should be dismissed.

### 3.  Plaintiff fails to plausibly allege that any agreement existed; thus, his conspiracy claim should be dismissed.

Plaintiff alleges across all of the above claims that Deputy Chapa, Deputy Brooks, and Sheriff Mills conspired to deprive Plaintiff of his right of access to the law library, to retaliate against Plaintiff for filing his previous lawsuits, and to discriminate against Plaintiff on the basis of his sexual orientation.  However, Plaintiff has not plausibly alleged that these defendants engaged in any "conspiracy."

To state a conspiracy claim under § 1983, a plaintiff must allege both an agreement between a defendant and others, involving at least one person acting under color of state law, to commit an illegal act, and an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).  Here, "Plaintiff's § 1983 conspiracy claim has a fatal flaw: the absence of any specific allegations of an agreement among the Acting Defendants."  *See Wingard v. Louisiana through Dep't of Pub. Safety & Corrections*, 594 F. Supp. 3d 704, 719 (M.D. La. 2022).  Plaintiff fails to allege any facts, let alone any non-conclusory facts, indicating such an agreement.  Moreover, as discussed above, Plaintiff fails to plausibly allege that a constitutional violation occurred—which provides the underpinning for any claim of conspiracy.  Plaintiff's conspiracy claim should be dismissed.

---

intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or (3) intentionally subjects another to sexual harassment.  TEX.PENAL CODE ANN. § 39.03.

**4. *Plaintiff's claim that Aransas County failed to follow federal guidelines is conclusory and should be dismissed.***

Plaintiff also contends that Aransas County should be held liable because it should be following federal guidelines, not the Texas Commission on Jail Standards, "for the use of, said privileged law library." (Doc. No. 1, p. 3.) Liberally construed, to the extent that Plaintiff's allegation is that Aransas County failed to adopt appropriate policies, Plaintiff fails to make a plausible claim.

Supervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022). But such liability arises only when the officials act, or fail to act, with deliberate indifference. *See Monacelli v. City of Dallas*, No. 3:21-CV-02649, 2023 WL 6563410, at *10 (N.D. Tex. Sept. 1, 2023) (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)), *adopted*, 2023 WL 6370753 (N.D. Tex. Sept. 29, 2023). A plaintiff must plausibly allege that the official had actual or constructive notice that his or her failure to adopt policies would result in constitutional violations, and such actual or constructive knowledge typically requires showing notice of a pattern of similar constitutional violations. *Monacelli*, 2023 WL 65634310, at *10 (citing *Crittindon*, 37 F.4th at 186).

Here, Plaintiff alleges only that the Library Policy, which Plaintiff alleges is enacted pursuant to the Texas Commission on Jail Standards, is not appropriate because the Aransas County Detention Facility "is a federal holding facility, and should be following federal guidelines." (Doc. No. 1, p. 3.) Even if Plaintiff is correct that the Aransas County Detention Center holds individuals in federal custody, Plaintiff himself was not being held in federal custody. In any event, he fails to identify any specific federal standard that differs from the Texas Commission on Jail Standards with relation to the Library Policy or that required the

defendants to adopt a policy that was any different from the Library Policy. Nor does Plaintiff

plausibly claim that the failure to adopt a federal policy regarding the detention center's law

library (whatever that federal policy might have been) caused a pattern of constitutional

violations, much less that Sheriff Mills or any other policymaker had actual or constructive

notice that constitutional violations would ensue unless the library policy was adopted.

Plaintiff's allegation in this regard is conclusory and should be dismissed.

### 5. Plaintiff's requests for injunctive and declaratory relief should be denied as moot because Plaintiff is no longer housed at the Aransas County Detention Center.

Plaintiff seeks both equitable and monetary relief in this case for the alleged

constitutional violations that took place during his pretrial confinement at the Aransas County

Detention Center. Having since been convicted, Plaintiff is now housed at the TDCJ-CID's

Stevenson Unit.

When a prisoner sues for equitable relief under § 1983 and is no longer under the control

or custody of the defendants, his claims for declaratory and injunctive relief are rendered moot.

*Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (citing *Beck v.

Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)). That rule is premised upon the idea that equitable

relief should only be granted if the plaintiff can present a "sufficient immediacy and reality" that

he is at risk of suffering a direct future injury as a result of the challenged official conduct. *City

of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983).

As noted above, Plaintiff requests that the Court issue a declaratory judgment stating that

the actions of the defendants at the Aransas County Detention Center violated the United States

Constitution. The undersigned liberally construes Plaintiff's prayer for injunctive relief to be for

"a preliminary and permanent injunction" requiring Defendants and Aransas County Detention

Center staff to allow and ensure Plaintiff's access to the law library.  However, Plaintiff is no longer in the custody of the Aransas County Detention Center.  He has been sentenced and placed under the authority of TDCJ-CID.  None of the actions of which Plaintiff complains occurred at any of the TDCJ-CID facilities at which Plaintiff was or is currently housed.  In fact, the source of Plaintiff's grievances is the Library Policy of the Aransas County Detention Center itself.  Plaintiff has not suggested that he will again be subjected, imminently or otherwise, to the Library Policy.  Thus, even if the district court concludes that Plaintiff has plausibly alleged a violation of his constitutional rights, the district court should nonetheless dismiss Plaintiff's claims for injunctive and declaratory relief as moot because of his transfer from the Aransas County Detention Center.

### E.  Claims not specifically addressed in this memorandum and recommendation.

To ensure justice and access to the courts, courts interpret pleadings of *pro se* litigants liberally.  *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)).  *Pro se* actions will not be dismissed based on technical pleading defects and should be construed to ensure such claims are given fair and meaningful consideration despite the unrepresented litigant's unfamiliarity with the law.  *See Haines*, 404 U.S. at 520-21; *see also Estelle*, 429 U.S. at 106 (*pro se* parties are normally accorded more leniency in the construction of their pleadings).

The undersigned has liberally construed Plaintiff's complaint and his responses to the Court's questionnaire to give his claims fair and meaningful consideration.  The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner consistent with providing appropriate leniency to *pro se* litigants while at the same time requiring compliance with applicable pleading and screening standards.

The undersigned has properly analyzed Plaintiff's claims under the First and Fourteenth Amendment, which Plaintiff also invokes in his complaint.  Yet, Plaintiff also asserts that Defendants have unconstitutionally deprived him of his right of access to the law library under the Sixth, Thirteenth, Fifteenth, and Nineteenth Amendments.  (Doc. No. 1, p. 5; Doc. No. 22, p. 2; Doc. No. 23, pp. 1-2; Doc. No. 27, p. 4; Doc. No. 29, pp. 1-2.)  Plaintiff specifically states that asking for law library books by name without knowing what is available "is some how a violation of my civil rights, 13th, 14th, 15th, and 19th Amendments and at most a violation of due process . . . equal rights, and is clearly official oppression." (Doc. No. 1, p. 5.)  However, Plaintiff does not allege any facts explaining how the Sixth (right to trial and counsel), Thirteenth (abolishment of slavery and involuntary servitude, except for as punishment for a crime), Fifteenth (the right of African American men to vote), or Nineteenth (the right of women to vote) Amendments should apply in his case.  The undersigned therefore concludes that Plaintiff has failed to provide sufficient factual detail or clarity to allow the claim to be properly analyzed by the Court under the Sixth, Thirteenth, Fourteenth, Fifteenth, and Nineteenth Amendments.  And, to the extent Plaintiff is attempting to raise any other claim not specifically addressed by the undersigned in this memorandum and recommendation, the undersigned comes to the same conclusion, that Plaintiff has failed to state such claim with sufficient factual detail or clarity to allow the claim to be identified or analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Again, Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id*.; *Twombly*, 550 U.S. at 556.  Further, the factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555.

29/32

Therefore, Plaintiff is advised that any claim not addressed in this memorandum and recommendation is not currently before this Court because Plaintiff has failed to allege sufficient facts or state such claims clearly.

### F.   Leave to amend?

The undersigned is recommending dismissal of Plaintiff's claims.  "When the dismissal of a *pro se* complaint is appropriate, it should generally be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint."  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  But leave to amend need not be granted if amendment would be futile – for example, if an amended complaint would still fail to state a claim upon which relief may be granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend).

"If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay."  *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citing *Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021) and *McLean v. King*, No. 3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020)); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement).  Here, Plaintiff has had the opportunity to plead his best case against Defendants, including through his lengthy responses in completion of the Court's questionnaire, but none of his claims are viable.  The undersigned, therefore, recommends dismissal without leave to amend.

### G. Assessment of "strike."

The undersigned is recommending dismissal of Plaintiff's *in forma pauperis* lawsuit as frivolous and for failure to state a claim upon which relief may be granted. The dismissal of Plaintiff's § 1983 case on those grounds should trigger the imposition of a "strike" pursuant to 28 U.S.C. § 1915(g). Should Plaintiff accumulate three such "strikes," he will no longer be permitted to bring any action in forma pauperis unless he is under imminent danger of serious physical injury.

### H. Conclusion and recommendation.

The undersigned recommends the following:

- The district court should DISMISS Plaintiff's lawsuit with prejudice as frivolous and for failure to state a claim upon which relief may be granted;

- The district court should NOT grant Plaintiff leave to amend his complaint.

- The district court should impose a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g), and should instruct the Clerk of Court to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### I. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy

shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

 SIGNED on January 22, 2024.

        _____
        MITCHEL NEUROCK
        United States Magistrate Judge